UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN BELLOCCHIO,

                          Plaintiff,

            -v.-

MERRICK GARLAND,

                          Defendant.

21 Civ. 3280 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

Plaintiff John Bellocchio brings this action against Defendant Merrick Garland, Attorney General of the United States, in his official capacity, alleging violations of Plaintiff's rights under the United States Constitution. Specifically, Plaintiff claims that the federal ban on the sale and purchase of human organs restricts his freedom of contract and his right to privacy in violation of the Fifth and Fourteenth Amendments. Defendant now moves for dismissal of Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6). For the reasons set forth in the remainder of this Opinion, the Court finds that Plaintiff lacks standing to bring his claims and grants Defendant's motion to dismiss.

### BACKGROUND[1]

#### A.    Factual Background

Plaintiff resides in Oakland, New Jersey, and works as a professional academic. (Compl. ¶¶ 4-5). For approximately three years, Plaintiff has also

---

[1]    This Opinion draws its facts from the Complaint ("Compl." (Dkt. #1)), the well-pleaded allegations of which are taken as true for the purposes of this Opinion. For ease of reference, the Court refers to Defendant's memorandum of law in support of the motion

worked as the owner of Fetch and More, a small business comprised of behaviorists who provide service dogs to veterans and other people in need of them.  (*Id.* at ¶ 6).  Plaintiff alleges that he became interested in the concept of selling his organs after he encountered financial difficulties, and that he was "shocked" when his research uncovered that the purchase and sale of human organs was prohibited by the National Organ Transplant Act of 1984 ("NOTA"), Pub. L. 98-507, 98 Stat. 2339.  (*Id.* at ¶¶ 11, 23-24).  To verify his research, Plaintiff called a "major medical center" located within the Southern District of New York, where an employee confirmed that Plaintiff could legally donate his organs, but could not legally sell them.  (*Id.* at ¶¶ 25-26).

Plaintiff now challenges the constitutionality of the NOTA provision prohibiting the sale and purchase of human organs, 42 U.S.C. § 274e (the "NOTA Ban"), which provision states, in relevant part, that "it shall be unlawful for any person to knowingly acquire, receive, or otherwise transfer any human organ for valuable consideration for use in human transplantation if the transfer affects interstate commerce."  42 U.S.C. § 274e(a).  Violations of the NOTA Ban are punishable by a maximum fine of $50,000, a maximum term of imprisonment of five years, or both.  *Id.* § 274e(b).

---

to dismiss as "Def. Br." (Dkt. #18); to Plaintiff's memorandum of law in opposition to the motion to dismiss as "Pl. Opp." (Dkt. #19); and to Defendant's reply memorandum of law in support of the motion to dismiss as "Def. Reply" (Dkt. #20).  As Plaintiff's opposition brief did not include numbered pages, citations to that brief refer to the page numbers provided by the ECF filing system.

In his Complaint, Plaintiff alleges that nearly 114,000 people in the United States are currently on a waiting list for a lifesaving organ transplant, and that 20 people die each day from the lack of available organs.  (Compl. ¶¶ 13-14 (internal citations omitted)).  Plaintiff claims that more individuals would receive lifesaving organ transplants if healthy individuals were given a financial incentive to sell their organs.  (*Id.* at ¶¶ 20-21).

Plaintiff alleges that the NOTA Ban violates his freedom of contract as protected by the Contract Clause (Compl. ¶¶ 28-33), as well as his right to privacy under the Due Process Clause (*id.* at ¶¶ 43-54).[2]  Plaintiff asks this Court to strike down the NOTA Ban as unconstitutional, both on its face and as applied to him; to permanently enjoin Defendant from criminally prosecuting Plaintiff or others for violations of the NOTA Ban; and to grant such other relief as the Court may deem just and proper.  (*Id.* at 12).

## B.    Procedural Background

Plaintiff filed the Complaint in this case on April 15, 2021.  (Dkt. #1).  On July 26, 2021, Defendant filed a pre-motion letter requesting a conference to

---

[2]     The Court does not reach the merits of Plaintiff's constitutional claims, but it notes for the sake of accuracy that the Contract Clause provides that "[n]o *State* shall ... pass any ... Law impairing the Obligation of Contracts."  U.S. Const., art. I, § 10 (emphasis added).  The Contract Clause does not constrain federal legislation.  *See Ames* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1179 (2d Cir. 1977) ("The obligation of contracts clause does not, of course, apply to the federal government[.]").

Further, Plaintiff brings his "right to privacy" claim under the Due Process Clause of the Fourteenth Amendment.  (Compl. ¶ 44).  That amendment similarly provides that "[n]o *state* shall ... deprive any person of life, liberty, or property, without due process of law[.]".  U.S. Const. amend. XIV, § 1 (emphasis added).  As Plaintiff is suing to enjoin a federal officer from enforcing a federal statute, his claim would properly be brought under the Due Process Clause of the Fifth Amendment.  U.S. Const. amend. V ("No person shall ... be deprived of life, liberty, or property, without due process of law[.]").

discuss his intention to file a motion to dismiss.  (Dkt. #10).  Plaintiff filed a response to Defendant's pre-motion letter on August 5, 2021.  (Dkt. #13).  On August 13, 2021, the Court held a conference at which it set a deadline for Plaintiff to amend his Complaint, as well as a briefing schedule for Defendant's anticipated motion to dismiss.  (*See* Minute Entry for Aug. 13, 2021).  On September 7, 2021, having been advised that Plaintiff did not intend to amend his Complaint, the Court issued an Order confirming the briefing schedule for Defendant's motion.  (Dkt. #14).

On October 4, 2021, Defendant filed his motion to dismiss under various subsections of Federal Rule of Civil Procedure 12(b), arguing in particular that Plaintiff's complaint should be dismissed under Rule 12(b)(1) for lack of Article III standing, under Rule 12(b)(3) for improper venue, and under Rule 12(b)(6) for failure to state a claim.  (Dkt. #17-18).  Plaintiff filed his opposition brief on November 4, 2021.  (Dkt. #19).  Defendant filed a reply memorandum of law in further support of his motion to dismiss on November 18, 2021.  (Dkt. #20). Accordingly, the motion is fully briefed and ripe for the Court's consideration.

## DISCUSSION

**A.    The Court Grants Defendant's Motion to Dismiss Under Rule 12(b)(1)**

### 1.    Applicable Law

In all matters, the Court's authority to exercise jurisdiction is constitutionally limited to actual cases and controversies.  *See* U.S. Const., art. III, § 2, cl. 1.; *Am. Civ. Liberties Union* v. *Clapper*, 785 F.3d 787, 800 (2d Cir. 2015) ("[N]o principle is more fundamental to the judiciary's proper role in our

system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." (quoting *Clapper* v. *Amnesty Int'l USA*, 568 U.S. 398, 408 (2013))).  This jurisdictional limitation requires, among other things, that a party have standing to pursue his claims.  *See Spokeo, Inc.* v. *Robins*, 578 U.S. 330, 338 (2016) ("Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy … to ensure that federal courts do not exceed their authority as it has been traditionally understood.").

In order to establish standing, a party must demonstrate that he has (i) suffered an injury in fact, (ii) that is fairly traceable to the challenged conduct of the defendant, and (iii) that is likely to be redressed by a favorable judicial decision.  *Spokeo*, 578 U.S. at 338 (citing *Lujan* v. *Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  An injury in fact is "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Spokeo, Inc.*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560).

To establish standing to obtain prospective relief, a plaintiff must demonstrate a "likelihood that he will be injured in the future."  *Carver* v. *City of N.Y.*, 621 F.3d 221, 228 (2d Cir. 2010); *accord Susan B. Anthony List* v. *Driehaus*, 573 U.S. 149, 159 (2014) ("An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur.").  In particular, a plaintiff bringing a "pre-enforcement challenge" to a criminal statute is tasked with demonstrating a "credible threat of prosecution" under such statute in order to maintain

standing. *Adam* v. *Barr*, No. 18 Civ. 2106 (AJN), 2019 WL 1426991, at *3 (S.D.N.Y. Mar. 29, 2019), *aff'd*, 792 F. App'x 20 (2d Cir. 2019) (summary order). Where a plaintiff asserts injury from threatened prosecution, the Supreme Court has instructed that "imminence" does "not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat — for example, the constitutionality of a law threatened to be enforced." *Knife Rts., Inc.* v. *Vance*, 802 F.3d 377, 384 (2d Cir. 2015) (quoting *MedImmune, Inc.* v. *Genentech, Inc.*, 549 U.S. 118, 128-29 (2007)); *accord Adam*, 2019 WL 1426991, at *3 ("[C]ourts are generally willing to presume that the government will enforce the law as long as the relevant statute is recent and not moribund." (internal quotation marks and citations omitted)); *see generally Steffel* v. *Thompson*, 415 U.S. 452, 480 (1974) (Rehnquist, J., concurring) (observing that "declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity"). Rather, injury in fact can be established by plausible allegations that a plaintiff "inten[ds] to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159 (internal quotation marks omitted).

"The identification of a credible threat [of prosecution] sufficient to satisfy the imminence requirement of injury in fact necessarily depends on the particular circumstances at issue." *Knife Rts.*, 802 F.3d at 384. Importantly, a credible threat of prosecution cannot rest on fears that are "imaginary or

speculative." *Id.* (quoting *Babbitt* v. *United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).  Nor is a credible threat of prosecution evident where plaintiffs "do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible." *Id.* (quoting *Babbitt*, 442 U.S. at 298-99 (internal quotation marks omitted)).  In determining whether a credible threat of enforcement exists, courts have considered (i) whether or not a law has been enforced against a plaintiff in the past, *Adam*, 2019 WL 1426991, at *4 (citing *Knife Rts.*, 802 F.3d at 384-90); (ii) whether authorities have directly or expressly threatened the plaintiff with enforcement, *id.* (citing *Cayuga Nation*, 824 F.3d at 331-32; *Knife Rts.*, 802 F.3d at 390); and (iii) the history of prosecution or enforcement under the statute, *id.* (citing *Oklevueha Native Am. Church of Hawaii, Inc.* v. *Holder*, 646 F.3d 829, 835 (9th Cir. 2012); *see also Susan B. Anthony List*, 573 U.S. at 164 ("We have observed that past law enforcement against the same conduct is good evidence that the threat of enforcement is not 'chimerical.'" (internal citation omitted))).

   "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova* v. *United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A motion to dismiss for lack of Article III standing challenges the subject-matter jurisdiction of a federal court, and, accordingly, is properly brought under [Rule] 12(b)(1)."  *SM Kids, LLC* v. *Google LLC*, 963 F.3d 206, 210 (2d Cir. 2020) (citing *Carter* v. *HealthPort Techs., LLC*, 882 F.3d 47, 56 (2d Cir. 2016)).

A Rule 12(b)(1) motion can be either "facial," meaning it is based solely on the allegations of the complaint and exhibits attached to it, or "fact-based," meaning it is based on evidence beyond the pleadings.  *Harty* v. *W. Point Realty, Inc.*, 28 F.4th 435, 441 (2d Cir. 2022) (quoting *Carter*, 822 F.3d at 56).  A plaintiff opposing a facial Rule 12(b)(1) motion bears "no evidentiary burden." *Reliability Inc.* v. *Doki*, No. 20 Civ. 7109 (KPF), 2021 WL 3408589, at *6 (S.D.N.Y. Aug. 4, 2021) (quoting *Carter*, 822 F.3d at 56).  Instead, to resolve a facial Rule 12(b)(1) motion, a district court must "determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction."  *Id.* (quoting *Carter*, 822 F.3d at 56 (internal quotation marks and alterations omitted)).  To make that determination, a court must "accept the complaint's allegations as true and draw all reasonable inferences in favor of the plaintiff."  *Id.* (quoting *Carter*, 822 F.3d at 57 (internal quotation marks and alterations omitted)).

"When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds, the Court must consider the Rule 12(b)(1) motion first."  *Reliability Inc.*, 2021 WL 3408589, at *6 (citing *Almazon* v. *JPMorgan Chase Bank, Nat'l Ass'n*, No. 19 Civ. 4871 (VEC), 2020 WL 1151313, at *6 (S.D.N.Y. Mar. 9, 2020), *appeal dismissed*, No. 20-1138 (2d Cir. Aug. 4, 2020)); *accord Rhulen Agency, Inc.* v. *Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  Thus, at the outset, the Court must address Defendant's argument that the Court lacks subject matter jurisdiction.

### 2.    Analysis

Inasmuch as the parties have submitted no extrinsic evidence, the instant Rule 12(b)(1) motion is facial, meaning the Court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction.  Defendant argues in the first instance that Plaintiff lacks standing because he has failed to allege injury in fact.  (Def. Br. 5).  More specifically, Defendant argues that Plaintiff's claims — that he "became interested" in the idea of selling organs and was "shocked" to learn that it would be illegal to do so — are insufficient to demonstrate a concrete intention to violate the NOTA Ban by selling or purchasing human organs.  (*Id.* (citing Compl. ¶¶ 23-24)).  Further, Defendant contends that even if Plaintiff has alleged a concrete intention to violate the NOTA Ban, he has failed to allege a credible threat of prosecution if he were to do so.  (Def. Br. 5).  In response, Plaintiff contends that if he chooses to sell his kidney, he will "*inevitably* be charged under federal law," and that a credible threat of prosecution can be inferred from the statute's specific civil and criminal penalties and use of the term "shall," which, according to Plaintiff, connotes mandatory penalization. (Pl. Opp. 4 (emphasis added)).

The Court agrees with Defendant that Plaintiff has failed to allege either a concrete intention to violate the law or a credible threat of prosecution if he were to do so.  Accordingly, Plaintiff lacks standing to bring his claims.  To begin, Plaintiff does not plead any facts that suggest a concrete intention to buy or sell human organs.  *See Jones* v. *Schneiderman*, 101 F. Supp. 3d 283,

293 (S.D.N.Y. 2015) (finding that plaintiff lacked standing where he failed to demonstrate concrete plans to perform, in the near future, the conduct that officials would consider illegal); *see also Adam*, 2019 WL 1426991, at *3 (finding that plaintiff lacked standing to bring a pre-enforcement challenge to the Controlled Substances Act where he failed to allege "how he would seek to obtain marijuana, how or where he intends to use it, [or] how much marijuana he intends to use").  While Plaintiff asserts in his opposition brief that he wants to sell his organs (*see* Pl. Opp. 4), he does not plead any facts in the Complaint to suggest he is "able and ready" to engage in such a sale.  *See Carney* v. *Adams*, 141 S. Ct. 493, 501-02 (2020) (finding that because plaintiff had not shown that he was "able and ready" to apply for a judicial vacancy in the imminent future, he had failed to establish standing to challenge a state law restricting judgeship eligibility).  Indeed, Plaintiff spends more time in the Complaint announcing his "commit[ment] to changing the law that prohibits the sale of one's own personal property: a vital organ" (Compl. ¶ 1) than on establishing his own Article III injury.  Plaintiff does not claim, for example, to have a potential buyer to whom he might sell his organs, nor does he claim to have taken steps to prepare for such an exchange.  Rather, Plaintiff merely suggests that he might have wanted to sell his organs had it been legal to do so.  *See Carney,* 141 S. Ct. at 502 ("'[S]ome day intentions' do 'not support a finding of the actual or imminent injury that our cases require.'" (quoting *Lujan*, 504 U.S. at 564)).  Plaintiff's only tangible connection to the NOTA Ban

lies in the "shock[]" he experienced after learning it existed.  (Compl. ¶ 24).
This allegation is insufficient to confer standing.

Further, Plaintiff has not alleged a credible threat of prosecution if he
were to violate the NOTA Ban.  Though Plaintiff is correct that exchanging
organs for compensation is prohibited under the NOTA Ban, and that specific
criminal and civil penalties attach to such violations, Plaintiff fails to allege
facts in his Complaint that would enable the Court to infer anything about the
likelihood of prosecution were he to engage in this prohibited conduct.  For
example, Plaintiff does not plead any facts suggesting that he has been directly
threatened with prosecution, or any facts relating to the history of enforcement
of the NOTA Ban.  *See Adam*, 2019 WL 1426991, at *4 (observing that in
evaluating pre-enforcement standing, courts have taken into account "direct or
express threats of prosecution" as well as "the history of past prosecution or
enforcement under the statute").  As currently alleged, Plaintiff's fears of
prosecution are no more than imaginary and speculative.  Accordingly, Plaintiff
lacks standing to bring his claims, and the case must be dismissed for lack of
subject matter jurisdiction.[3]

---

[3]     "When a case is dismissed for lack of federal subject matter jurisdiction, Article III
deprives federal courts of the power to dismiss the case with prejudice."  *Scripts
Wholesale Inc.* v. *Mainspring Distrib. LLC*, No. 21-1775, 2022 WL 1553038, at *2 (2d Cir.
May 17, 2022) (summary order) (quoting *Katz* v. *Donna Karan Co., L.L.C.*, 872 F.3d 114,
121 (2d Cir. 2017)) (internal quotation marks and alterations omitted).  Thus, Plaintiff's
claims are dismissed without prejudice.

**B.     The Court Does Not Reach Defendant's Arguments Under Rules 12(b)(3) and 12(b)(6)**

Separately, Defendant argues that Plaintiff's complaint must be dismissed under Rule 12(b)(3) for improper venue.  In this regard, Plaintiff posits that venue is proper because substantial events giving rise to his Complaint occurred within its boundaries.  (Compl. ¶ 3).  Namely, Plaintiff called a "major medical center" located within the Southern District of New York to confirm that he could not sell his organs.  (*Id.* at ¶¶ 25-26; Pl. Opp. 3).  Plaintiff also asserts that if selling one's kidney were legal, Plaintiff would proceed with the transaction and surgical procedure within this District.  (Pl. Opp. 3).[4]  In his opposition brief, Plaintiff requests transfer of this case to the District of New Jersey in lieu of dismissal.  (*Id.*).  However, as Plaintiff's claims must be dismissed for lack of subject matter jurisdiction, the Court need not determine whether venue would have been appropriate in this District, or whether transfer to the District of New Jersey would have been warranted.

Finally, Defendant argues that Plaintiff's claims must be dismissed for failure to state a claim under Rule 12(b)(6).  (Def. Br. 6-14).  Because the Court lacks subject matter jurisdiction, it lacks a legal basis to consider the merits of Plaintiff's claims.  *See Oliveras* v. *United States*, 371 F. Supp. 3d 105, 113-14 (S.D.N.Y. 2019) (citing *Cornwell* v. *Credit Suisse Grp.*, 666 F. Supp. 2d 381,

---

[4]     The Court notes that Plaintiff did not mention this intent in his Complaint, and a party "cannot amend its pleading through its opposition brief[.]"  *See Maxim Grp. LLC* v. *Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 308 (S.D.N.Y. 2010).  In any event, Plaintiff's assertion does not alter the outcome of this Opinion.

385-86 (S.D.N.Y. 2009) ("[A]bsent authority to adjudicate, the Court lacks a legal basis to grant any relief, or even consider the action further."); *Norex Petroleum Ltd.* v. *Access Indus., Inc.*, 540 F. Supp. 2d 438, 449 (S.D.N.Y. 2007) (dismissal for lack of jurisdiction "moots, and thus terminates, all other pending motions"); *see also 40-46 Main St. Realty Corp.* v. *City of N.Y.*, No. 16 Civ. 6900 (SJ) (SJB), 2017 WL 6886718, at *3 (E.D.N.Y. Nov. 27, 2017) ("Where a party has made both a Rule 12(b)(1) motion *and* a Rule 12(b)(6) motion, and the court concludes that there is no subject matter jurisdiction, it is appropriate to avoid a decision on the Rule 12(b)(6) motion" (emphasis in original)).

## C.    The Court Denies Leave to Amend

Lastly, the Court considers whether to grant Plaintiff leave to file an amended complaint.  Federal Rule of Civil Procedure 15(a)(2) provides that a court should freely give leave to amend "when justice so requires."  Fed. R. Civ. P. 15(a)(2); *see also McCarthy* v. *Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  That said, it remains "within the sound discretion of the district court to grant or deny leave to amend."  *Broidy Cap. Mgmt. LLC* v. *Benomar*, 944 F.3d 436, 447 (2d Cir. 2019).  Leave may be denied where a plaintiff does not request to amend his pleading.  *Gallop* v. *Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (observing that "no court can be said to have erred in failing to grant a request that was not made"); *see also Morey* v. *Windsong Radiology Grp., P.C.*, 794 F. App'x 30, 34 (2d Cir. 2019) (summary order) (holding that "the district court did not abuse its discretion in declining to *sua sponte* allow [plaintiff]

13

leave to file an amended complaint"). Further, leave may be denied where the proposed amendment would be futile. *See Olson* v. *Major League Baseball*, 447 F. Supp. 3d 174, 177 (S.D.N.Y. 2020). Amendment is futile if the "amended portion of the complaint would fail to state a cause of action." *Parker* v. *Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000); *see also Kassner* v. *2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007) (finding amendment not futile where amended complaint would be "sufficient to withstand a motion to dismiss"); *Pompey-Primus* v. *Success Acad. Charter Sch., Inc.*, No. 21 Civ. 3981 (KPF), 2022 WL 504541, at *10 (S.D.N.Y. Feb. 17, 2022) (denying leave to amend where Plaintiff did not amend her pleading or request leave to do so, and amendment would have been futile).

Here, Plaintiff has neither amended his pleading, accepted the Court's invitation to amend, nor requested leave to do so. *First*, Plaintiff did not amend as a matter of course under Rule 15(a)(1). *Second*, as discussed, Plaintiff did not amend after the Court granted him leave to amend following Defendants' filing of a pre-motion letter raising the very arguments that the Court has found to be dispositive here. (Dkt. #10). *Third*, Plaintiff has not requested leave to amend in his briefing on the instant motion.

Relatedly, Plaintiff has not identified any amendments that would alter the Court's analysis, and neither his pleading nor his briefing suggests that he is likely to be able to establish standing. In his four-page opposition brief, Plaintiff does not address his failure to allege facts demonstrating that he has a concrete intention to violate the NOTA ban. Rather, he merely restates that

14

"Plaintiff wishes to sell his kidney." (Pl. Opp. 4). Given the Court's finding that this is insufficient to establish injury in fact, there is no reason to believe that Plaintiff will be able to supplement his pleading with additional facts that would nudge his claims across the plausibility threshold. Accordingly, the Court denies Plaintiff leave to amend.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's claims are dismissed without prejudice. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

SO ORDERED.

Dated:     July 12, 2022
           New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge